**FILED**

**November 8, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.T. and H.B.**

**No. 21-0139** (Kanawha County 20-JA-403 and 20-JA-416)

## MEMORANDUM DECISION

Petitioner Mother E.H., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's January 13, 2021, order terminating her parental rights to K.T. and H.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner engaged in multiple acts of violence in the presence of her then three-year-old son, K.T. The DHHR alleged that petitioner was arrested for malicious wounding earlier in August of 2020 after stabbing a minor female in the face with a steak knife in the presence of K.T. The DHHR alleged that petitioner asserted that she took this action in self-defense after a group of people, including the minor female, came to her apartment door and threatened her. According to the DHHR, petitioner admitted to other incidents of violence with tenants of her apartment building, and that these incidents also occurred in the presence of the child. The DHHR alleged

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

that petitioner also admitted to domestic violence during prior relationships. Upon an investigation of the home, the DHHR noted "a lot of destruction," including several holes in the apartment walls. The DHHR concluded that petitioner demonstrated a lack of impulse control and unresolved mental health issues that threatened the welfare of the child. The DHHR also alleged that petitioner was previously involved in an abuse and neglect proceeding in 2012, resulting in the placement of H.B. in the sole custody of the child's biological father. The DHHR alleged that petitioner had failed to provide the child with any financial support since she was placed with her father.

Petitioner waived her preliminary hearing, and the circuit court ordered the DHHR to provide petitioner remedial services, including random drug screening, adult life skills and parenting classes, supervised visitation with K.T., counseling, bus passes, and a parental fitness evaluation. Further, upon petitioner's testimony that she had not visited H.B. in two years, the court ordered that she have no visitation with the child until her parental fitness evaluation was completed.

The circuit court convened for an adjudicatory hearing in October of 2020, and petitioner stipulated to the allegations that she engaged in fights in the presence of the children, that she had an anger control problem that caused her to abuse the children, and that she had mental health issues without effective treatment. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, and the circuit court held that motion in abeyance. The court ordered that the DHHR continue to provide petitioner remedial services. Finally, the circuit court admitted into evidence a DHHR court summary in which the DHHR reported that petitioner tested positive for marijuana five different times in September of 2020. Due to petitioner's positive drug screens, she had not been permitted to visit K.T.

In December of 2020, the circuit court held the final dispositional hearing. The court admitted a DHHR summary prepared in advance of the hearing. The DHHR reported that petitioner's parental fitness evaluation had been completed. During the evaluation, petitioner minimized the referral incidents, stating that she "stabbed somebody . . . that's it." She also stated, regarding an incident where she attacked an ex-boyfriend while K.T. was present, "it wasn't like I left [K.T.] in the park without anybody. He was watched by two grown women." The evaluator opined that petitioner's history of unstable interpersonal relationships, self-destructive behavior, periods of intense anger, and self-harmful behavior was indicative of borderline personality disorder, which is "known to be pervasive in nature and difficult to treat." Ultimately, the evaluator issued a "poor" prognosis that petitioner could obtain minimally adequate parenting. The DHHR reported that petitioner tested positive for marijuana through October of 2020 and did not visit with K.T. until November of 2020. K.T. reportedly reacted negatively to visitation with petitioner, exhibiting poor speech, toileting accidents, and tantrums. Finally, the DHHR reported that during a December of 2020 multidisciplinary team ("MDT") meeting, it notified petitioner that the DHHR and the guardian sought to terminate her parental rights. Petitioner reacted by "screaming and yelling to the point of incoherence." After the MDT meeting, petitioner threatened suicide and posted details of the proceedings to social media, violating the circuit court's prior orders regarding confidentiality.

A DHHR case worker testified that petitioner continued to display the same erratic behaviors that resulted in the removal of the children. According to the DHHR worker, petitioner asserted at the MDT meeting that she would continue to participate in services despite the DHHR's recommendation to terminate her parental rights. The DHHR worker testified, however, that petitioner ceased participation in all services. The DHHR worker further testified that petitioner was "extremely emotional" during visitations with K.T. and became upset with the child when he would not call her "mommy." The worker also stated that H.B. is "terrified" of petitioner and does not want to see her.

Petitioner testified that she was upset during visitation with K.T. but disputed that she was aggressive toward the child. Petitioner acknowledged that she had a problem with anger and her emotions that affected her ability to care for the children. She explained that she "thought [she] was doing very well" prior to the MDT meeting, but the meeting caused her to have a "manic episode." She stated that she planned to go to a mental hospital and "get on the proper medication." When asked why she was not taking medication, she testified that her mood stabilizer was causing her to be depressed.

Ultimately, the circuit court found that petitioner failed to participate adequately in services and failed to benefit from the services provided. The court observed that petitioner failed to obtain and maintain employment and independent housing. It found that petitioner's psychological evaluation was "very troubling" and indicated a poor prognosis for attaining minimally adequate parenting. Further, the court found that petitioner's behavior was impulsive and erratic, and that petitioner failed to comply with her medication regimen. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Petitioner now appeals the circuit court's January 13, 2021, order that denied her motion for an improvement period and terminated her parental rights to the children.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

[2]K.T.'s father's parental rights were also terminated below. According to the parties, the permanency plan for K.T. is adoption by a relative. The permanency plan for H.B. is to remain in the custody of her nonabusing father.

committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and terminating her parental rights. According to petitioner, she demonstrated the ability to successfully comply with the terms of an improvement period and had "reached a level of functioning sufficient to care for her children." She asserts that the evidence shows that she was cooperating with counseling and other services designed to help her learn to manage her anger. Petitioner argues that it was not until she was informed that the DHHR and the guardian sought to terminate her parental rights based on the parental fitness evaluation that she ceased participation in services. She further argues that the parental fitness evaluation should not have outweighed her evidence of actual compliance during the proceedings.

West Virginia Code § 49-4-610(2)(A) and (B), which governs post-adjudicatory improvement periods, requires the parent to file "a written motion requesting an improvement period" and "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Here, we agree with the circuit court that petitioner failed to prove by clear and convincing evidence that she was likely to fully participate in an improvement period. At the time of the dispositional hearing, petitioner had ceased participation in remedial services. By petitioner's own admission on appeal, she "quit participating in services and again used drugs." She asserts that by the time of the dispositional hearing, "she had decided to try again and work on her anger issues if given a chance"; however, she did not present any evidence to this effect. Rather, she admitted below and on appeal that she ceased participation in services. To the extent that she asserts that the recommendation of the DHHR and the guardian had some effect on her decisions, this only serves to underscore petitioner's erratic and impulsive behavior, which put her children at risk in her care. Critically, the granting of an improvement period is the purview of the circuit court—not the parties. We find no error in the circuit court's denial of petitioner's improvement period considering her decision to not participate in services prior to the dispositional hearing.

Further, we find no error in the circuit court's termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and when termination of parental

rights is necessary for the welfare of the children. Notably, West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect and abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[ren].

As explained above, petitioner failed to follow through with a reasonable family case plan designed to reduce the abuse and neglect of the children when she ceased participating in the remedial services offered by the DHHR. Furthermore, petitioner admitted that she did not comply with her medication regimen, even though her plan to improve was to "get on the proper medication." Despite petitioner's bold assertions on appeal that she "was never given a chance," the DHHR provided her remedial services throughout the proceedings. She failed to avail herself of those services and continued to exhibit the erratic and impulsive behaviors that existed at the beginning of the proceedings. Moreover, termination of petitioner's parental rights was in the children's best interests. H.B. was reportedly afraid of petitioner, and petitioner admitted to having no contact with the child for two years. Also, then three-year-old K.T. reacted poorly to visitations with petitioner and exhibited negative behaviors following those visitations. This Court has held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citation omitted). Considering petitioner's failure to improve upon the conditions of neglect and abuse despite the provision of services, we find no error in the circuit court's ultimate decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 13, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton